**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| **COIL CHEM LLC** | ) | |
| and | ) | |
| **NOLES INTELLECTUAL** | ) | |
| **PROPERTIES, LLC,** | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | **Cause No. 7:19-cv-00225** |
| **V.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **DURACHEM PRODUCTION CO.** | ) | |
| and | ) | |
| **JAMES BUCK BRIGGS** | ) | |
| **Defendants** | ) | |
| _____ | ) | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

1.      Coil Chem LLC ("Coil") and Noles Intellectual Property, LLC ("Noles IP") (collectively referred to as Plaintiffs or "Coil Chem") files this Original Complaint and demand for jury trial seeking relief from patent infringement, misappropriation of trade secrets and confidential information, breach of contract, and unjust enrichment by James Buck Briggs ("Briggs") and Durachem Production Company, LLC ("Durachem") (collectively referred to as "Defendants").

## I.      THE PARTIES

2.   Plaintiff Coil is an Oklahoma Limited Liability Company, with its principal place of business located at 2103 E Ladd Rd Washington, OK 73093.

3.   Plaintiff Noles IP is an Oklahoma Limited Liability Company, with its principal place of business located at 2103 E. Ladd Rd., Washington, OK 73093.

4.  Defendant Durachem is a Texas Limited Liability Company with its principal place of business at 2495 N. Hwy 385, Andrews, TX 79714 and a registered agent for service of process at the same address.

5.  On information and belief, Durachem makes, uses, sells, and offers to sell products and systems throughout Texas, including in this judicial district, and introduces products and systems that infringe into the stream of commerce knowing that they would be sold in Texas and this judicial district.

6.  Defendant James Buck Briggs is a person having a postal address at 2495 N. Hwy 385, Andrews, TX 79714.

7.  On information and belief, James Buck Briggs, as an employee of Durachem, makes, uses, sells, and offers to sell products and systems throughout Texas, including in this judicial district.

## II.   JURISDICTION AND VENUE

8.  This is an action for patent infringement arising under the patent laws of the U.S., 35 U.S.C. §§ 1 et seq.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.  This is an action for misappropriation of trade secrets by James Buck Briggs and Durachem Production Company, LLC ("Durachem") under 18 U.S.C. § 1836 et seq. This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1836 (d).

10. This is an action for misappropriation of trade secrets by James Buck Briggs and Durachem under the Texas Uniform Trade Secrets Act (CPRC, Title 6, Chapter 134A). This Court has subject matter jurisdiction pursuant to 28 U.S. Code §§ 1332 and 1367.

11. This Court has personal jurisdiction over Durachem because: Durachem has minimum contacts within the State of Texas and this judicial district; Durachem has purposefully

availed itself of the privileges of conducting business in the State of Texas and in this judicial district; Durachem regularly conducts business within the State of Texas and within this judicial district; and Noles Intellectual Properties' cause of action arises directly from Durachem's business contacts and other activities in the State of Texas and in this judicial district.

12. This Court has personal jurisdiction over James Buck Briggs because: James Buck Briggs has minimum contacts within the State of Texas and this judicial district; James Buck Briggs, as an employee of Durachem has purposefully availed himself of the privileges of conducting business in the State of Texas and in this judicial district; James Buck Briggs, on behalf of Durachem regularly conducts business within the State of Texas and within this judicial district; and Coil Chem's causes of action arises directly from James Buck Briggs's business contacts and other activities in the State of Texas and in this judicial district.

13. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b). Durachem has committed acts of misappropriation, infringement and has a regular and established place of business in this District. Further, venue is proper because Defendant conducts substantial business in this forum, directly or through intermediaries, including, (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Texas and this District.

## III.    FACTUAL BACKGROUND

14.    James Buck Briggs worked at Coil, which is licensed to practice the technology covered by the Patents-in-Suit. He was intimately involved with the design details for Coil's oil

and gas completion fluid and hydration trailers subject to a Confidentiality and Nondisclosure

Agreement dated in March of 2014 with Coil Chem, LLC ("NDA").  The NDA, among other

things, prohibited Briggs from disclosing Confidential Information he learned from Coil.

15.    Upon accepting employment with Coil, Briggs received the Employment

Handbook ("Handbook") which provided Coil procedures and conditions of employment.  On

April 8, 2014, acknowledged receipt of the Handbook.  The Handbook contained the following

clause:

> During the course of work, an employee may become aware of confidential
> information about Coil Chem, LLC's business, including but not limited to
> information regarding Company finances, pricing, products and new product
> development, software and computer programs, marketing strategies, suppliers,
> customers and potential customers, and knowledge, skills and abilities of personnel.
> An employee also may become aware of similar confidential information belonging
> to the Company's clients. It is extremely important that all such information remain
> confidential, and particularly not be disclosed to our competitors. Any employee
> who improperly copies, removes (whether physically or electronically), uses or
> discloses confidential information to anyone outside of the Company may be
> subject to disciplinary action up to and including termination. Employees may be
> required to sign an agreement reiterating these obligations.

Further, the Handbook includes a separation clause reminding employees that if they leave the

company they must return all confidential information:

> 5.17. If You Must Leave Us
> Should you decide to leave the Company, we ask that you provide your Supervisor
> with at least 2 weeks advance notice of your departure. Your thoughtfulness will
> be appreciated.
> All Company property including, but not limited to, keys, security cards, parking
> passes, laptop computers, fax machines, uniforms, etc. must be returned at
> separation. Employees also must return all of the Company's Confidential
> Information upon separation. To the extent permitted by law, employees will be
> required to repay the Company (through payroll deduction, if lawful) for any lost
> or damaged Company property.
> As noted previously, all employees are employed at-will and nothing in this
> handbook changes that status.

Briggs did not give appropriate Notice and took Company Confidential information when he left as explained herein.

16.     While at Coil, James Buck Briggs obtained access to trade secrets, confidential information, customer lists and information, manufacturing contacts and sources, and know-how relating to Coil's oil and gas completion fluid and hydration trailers, such as technical specifications, quality systems, manufacturing processes, system plans, customer lists, manufacturers lists (contacts and sources), process diagrams, process characteristics, pricing lists, and the like.

17.     James Buck Briggs employment with Coil ended in August 2015.

18.     Based on information and belief, James Buck Briggs began working for Durachem after his employment with Coil ended. James Buck Briggs shared Coil's trade secrets, confidential information, manufacturing contacts and sources, and know-how without authorization from Coil. James Buck Briggs knowingly violated a non-disclosure agreement with Coil.

19.     On or about October 1, 2017, Chad Miller of Durachem provided photographs of an oil and gas completion fluid hydration trailer to Danny Wesley, President of Coil, that showed a trailer incorporating Noles Intellectual Properties' patented features.  The trailer in the photographs bore a logo from Friesen Trailers in Castle, Oklahoma on it.

20.     Within a few days, Mr. Wesley visited Friesen Trailers and spoke to its employee Mr. Abe Enns.

21.     Mr. Wesley asked Mr. Enns who Friesen was making the oil and gas completion fluid hydration trailer for.  Mr. Enns informed Mr. Wesley that Friesen was making the oil and gas completion fluid hydration trailer for Durachem.

22.     Mr. Wesley told Mr. Enns that Friesen and Durachem was not authorized to make, use, sell, or offer for sale the oil and gas completion fluid hydration trailer and for Friesen to stop building the trailer.

23.     Mr. Enns at Friesen did not respond to Mr. Wesley's demand to Friesen to stop.

24.     Mr. Wesley took photographs of the trailer on or about the day he spoke to Mr. Enns.  Said photographs are attached as Exhibits C-1 and C-2.

      a.     Exhibit C-1 shows a picture of the trailer with a tube bundle under the trailer and a tote on the trailer bed.

      b.     Exhibit C-2 shows another perspective of the trailer with the pumps and control systems toward the front of the bed and the tote toward the back.  The tube bundle is visible under the trailer.

25.     On or about February 1, 2019, Mr. Wesley took another trip to Friesen.

26.     On the second trip, Mr. Wesley saw that Friesen was making another oil and gas completion fluid hydration trailer.

27.     Like the first trailer, the second trailer included features patented by Noles IP without authorization.

28.     On or around June 3, Durachem posted a picture of what Mr. Wesley believes was the second Friesen trailer on Facebook.  The picture of second Friesen trailer is attached as Exhibit D.

29.     Exhibit D shows a trailer with features which are substantially similar to the features of the trailer pictured in Exhibit C, except that the trailer pictured in Exhibit C-1 and Exhibit C-2 comprises fluid totes.  During normal use, fluid totes would be installed on the trailer shown in Exhibit D.  It is believed there are further trailers.

**IV.     INFRINGEMENT OF THE '732 PATENT**

30. Plaintiffs hereby incorporate paragraphs 1-29 as if they were set forth herewith.

31. On October 10, 2017, U.S. Patent No. 9,782,732 ("the '732 patent"), entitled "Polymer blending system" was duly and legally issued by the U.S. Patent and Trademark Office. Noles Intellectual Properties owns the '732 patent by assignment.

32. The '732 patent's Abstract states, "A system for blending polymers and other chemicals in an aqueous liquid is provided. Static mixers and tubes, preferably in one or more tube bundles, provide a volume sufficient to allow a residence time in the system to hydrate a polymer. Static mixers may be integrated with a tube bundle. The system may be mounted on a portable base such as a trailer. The concentration of polymer and chemicals in water may be controlled by a controller. A variable speed electric pump may be utilized to precisely control the amount of polymers or other chemicals added to the aqueous liquid."

33. The following chart illustrates how features of Durachem's completion fluid hydration trailers meet the claims of the '732 patent:

| Claim | Element | Corresponding structure |
|---|---|---|
| 1 | A system for blending polymers to form a polymer solution in water, comprising: | Durachem procured two or more oil and gas completion fluid hydration trailers for blending polymers to form a polymer solution in water. The liquids are stored in totes on the trailer bed and pumped into the piping under the trailer where the blending occurs. |



Exhibit C-1.



Exhibit C-2.



Exhibit D.

| | | |
|---|---|---|
| | a water flow meter for connection to a source of water, a connection for adding a suspension of polymer in oil to the water, the | The two or more Durachem oil and gas completion fluid hydration trailers include water flow meters with connections for adding a suspension of polymer in oil to water with an input for a source of water in a tote and an outlet. The flow meter is a non-invasive flow meter that uses electrical current to measure the velocity of the fluid as it passes through the |

| | | |
|---|---|---|
| | connection having a first input for connection to a source of water and an outlet; | system. This velocity within a known diameter is then converted to a rate within the micro-processor. Pre-selected dosage ratios are entered into the processor as a volumetric ratio of the total water flow. This is calculated within the processor in the form or gallons of chemical per 10 barrels of water or gallons of chemicals per 1,000 gallons of water.<br><br><br><br>Exhibit C-1. |
| | a tube bundle connected to the connection and comprising a plurality of sections of tubes; | The two or more Durachem oil and gas completion fluid hydration trailers include tube bundles that have a plurality of sections of tubes and are connected to the connection.<br><br><br><br>Exhibit C-1.<br><br><br><br>Exhibit C-2. |

| | | |
|---|---|---|
| | | <br>Exhibit D. |
| | a variable speed electric pump for connection to a source of polymer in oil, the connection having a second input for the polymer in oil; | The two or more Durachem oil and gas completion fluid hydration trailers include a variable speed electric pump for connecting to a source of polymer in oil in a tote with a second input. In addition, the pumps that are used on this unit are electric over hydraulic pumps that utilize the Graco 290 extreme fluid ends. The Graco 290 provides the highest turn down ratio: 700 to 1. Giving each pump the capability of pumping between: 0.10/gpm of chemicals to 2/gpm of chemicals. This system also allows the volumetric ratio between the upper piston and the lower pumping barrel to be changed to provide for higher or lower chemical requirements. This structure also regulates the maximum hydraulic pressure delivered to the drive system.<br><br><br>Exhibit C-1. |
| | a controller for sending signals to the variable speed electric pump to control a flow rate of the polymer in oil in response to signals received from the water flow meter | The two or more Durachem oil and gas completion fluid hydration trailers include a controller for sending signals to the variable speed electric pump to control a flow rate of the polymer in oil in response to signals from the water flow meter. Multiple pumps provide for simultaneous introduction of plural chemicals controlled within the same processor and then controlled by the VFD. (Variable Frequency Drive). That then uses the relationship between the Hertz of the motor to establish rpm thereby converting RPM to the rate of the oil |

<table>
<tr><td></td><td></td><td>that is being provided to the upper drive piston. This unit can then be ran from the browser of a computer or smart phone. The data pump rates, pressures and chemical dosage rates and cumulative volumes are then recorded into the data acquisition system to generate real time data or entire job reports. This information can be accessed from the unit directly via wire or modem or over a cellular network.</td></tr>
</table>

| | | that is being provided to the upper drive piston. This unit can then be ran from the browser of a computer or smart phone. The data pump rates, pressures and chemical dosage rates and cumulative volumes are then recorded into the data acquisition system to generate real time data or entire job reports. This information can be accessed from the unit directly via wire or modem or over a cellular network.  Exhibit C-1. |
|---|---|---|
| 2 | The system of claim 1 further comprising a static mixer outside the tube bundle and connected to the tube bundle. | Based on information and belief, the two or more Durachem oil and gas completion fluid hydration trailers include 180-degree bends incorporated into the tube bundles as static mixers. |
| 3. | The system of claim 1 further comprising a pump connected to the source of water. | The Durachem trailers may be connected by pump to a water tank filled with water. |
| 4. | The system of claim 1 wherein a volume of the tube bundle is selected to provide a selected residence time of fluid flowing through the tube bundle at a selected flow rate. | The Durachem trailers include with a tube bundle that can be adjusted to provide a variety of readjust the resident time for fluid flowing through the tube bundle at a selected flow rate. |
| 9. | The system of claim 1 further including a source of water connected to the connection. | The Durachem trailers may be connected by pump to a water tank filled with water. |

| 10. | The system of claim 1 further including a plurality of static mixers located within the tube bundle. | Based on information and belief, the two or more Durachem oil and gas completion fluid hydration trailers include tube bundles with 180 degree bends incorporated into the tube bundles as static mixers. |
|---|---|---|

34. As illustrated in the table above, Durachem infringes claims 1-4 and 9-10 of the '732 patent either literally or under the doctrine of equivalents. On information and belief, Durachem also infringes claims 5-8.

35.    Durachem has known of the '732 patent at least by March 9, 2018 when Coil sent Durachem its cease and desist letter regarding Durachem's first infringing completion fluid hydration trailer.

36.    Durachem has caused and will continue to cause Noles Intellectual Properties and its licensees damage by infringing the '732 patent.

## V.    INFRINGEMENT OF THE '354 PATENT

37. Plaintiffs hereby incorporate paragraphs 1-36 as if they were set forth herewith.

38. On June 20, 2017, U.S. Patent No. 9,682,354 ("the '354 patent") entitled "Polymer blending system" was duly and legally issued by the U.S. Patent and Trademark Office. Noles Intellectual Properties owns the '354 patent by assignment.

39.    The '354 patent's Abstract states "A system for blending polymers and other chemicals in an aqueous liquid is provided. Static mixers and tubes, preferably in one or more tube bundles, provide a volume sufficient to allow a residence time in the system to hydrate a polymer. Static mixers may be integrated with a tube bundle. The system may be mounted on a portable base such as a trailer. The concentration of polymer and chemicals in water may be controlled by a controller. A variable speed electric pump or a metering valve may be utilized to precisely control the amount of polymers or other chemicals added to the aqueous liquid."

40.    The following chart illustrates how features of Durachem's completion fluid hydration trailers meet the claims of the '354 patent:

| Claim | Element | Corresponding structure |
|---|---|---|
| 1 | A system for blending polymers to form a polymer solution in water, comprising: | Durachem procured two or more completion fluid hydration trailers for blending polymers to form a polymer solution in water. The liquids are stored in totes on the trailer bed and pumped into the piping under the trailer where the blending occurs.<br><br><br>Exhibit C-1.<br><br><br>Exhibit C-2. |

<table>
<tr>
<td></td>
<td></td>
<td>

Exhibit D.</td>
</tr>
<tr>
<td></td>
<td>a water flow meter for connection to a source of water; a connection for adding a suspension of polymer in oil to the water, the connection having an input for connection to a source of water; a tube bundle connected to the connection and comprising a plurality of sections of tubes and static mixers;</td>
<td>The two or more Durachem completion fluid hydration trailers include water flow meters with connections to a source of water and a connection for adding a suspension of polymer in oil to the water including the input and a tube bundle connected to the connection and a plurality of tubes under the trailer and static mixers. A variable speed electric pump or a metering valve may be utilized to precisely control the amount of polymers or other chemicals added to the aqueous liquid.

The water flow meter with connections is shown below:



Exhibit C-1.


Exhibits C-1, C-2, and D show a plurality of sections of tubes:



Exhibit C-1.</td>
</tr>
</table>

| | | |
|---|---|---|
| | | "Static mixers and tubes, preferably in one or more tube bundles, provide a volume sufficient to allow a residence time in the system to hydrate a polymer." Abstract, '354 patent,<br><br><br>Exhibit C-2.<br><br><br>Exhibit D.<br><br>The concentration of polymer and chemicals in water may be controlled by a controller.<br><br><br>Exhibit D. |
| | a polymer in oil flow meter for connection to a source of polymer in oil; the connection having a second input for the polymer in oil; means for controlling the flow rate of polymer in oil; | The two or more Durachem completion fluid hydration trailers include polymer in oil flow meters for connection to a source of polymer in oil in a tote and a connection having a second input for the polymer in oil and a means for controlling the flow rate of the polymer in oil. |

| | a controller for sending signals to the means for controlling the flow rate of polymer in oil to control the flow rate of the polymer in oil in response to signals received from the water flow meter and the polymer in oil flow meter and an additional static mixer outside the tube bundle and connected to the tube bundle | The two or more Durachem completion fluid hydration trailers include a controller for sending signals to the means for controlling the flow rate of polymer in oil to control the flow rate of the polymer in oil in response to signals received from the water flow meter and the polymer in oil flow meter and an additional static mixer outside the tube bundle and connected to the tube bundle.<br><br><br><br>Exhibit C-1. |
|---|---|---|
| 2 | The system of claim 1 further comprising a pump connected to the source of water. | The Durachem system includes a pump connectable to a water source. |
| 3. | The system of claim 1 wherein a volume of the tube bundle is selected to provide a selected resonance time of fluid flowing through said tube bundle at a selected flow rate. | The Durachem system includes a tube bundle that can be adjusted to provide a variety of resonance time for fluid flowing through the tube bundle at a selected flow rate. |
| 6. | A system for blending polymers to form a polymer solution in water, comprising: | Durachem procured two or more completion fluid hydration trailers for blending polymers to form a polymer solution in water. The liquids are stored in totes on the trailer bed and pumped into the piping under the trailer where the blending occurs. |



Exhibit C-1.



Exhibit C-2.



Exhibit D.

| | | |
|---|---|---|
| | a water flow meter for connection to a source of water; a connection for adding a suspension of polymer in oil to the water, the connection having an input for connection to a source of water; a | the two or more Durachem completion fluid hydration trailers include water flow meters with connections to a source of water in a tote and a connection for adding a suspension of polymer in oil to the water including the input and a tube bundle connected to the connection and a plurality of tubes under the trailer and static mixers.

Shown below is the water flow meter with connections: |

| | | |
|---|---|---|
| | tube bundle connected to the connection and comprising a plurality of sections of tubes and static mixers; | <br>Exhibit C-1, extract.<br><br>Here is the plurality of sections of tubes in Exhibit C-1 and Exhibit C-2 and Exhibit D.<br><br><br>Exhibit C-1, extract.<br><br><br>Exhibit C-2.<br><br><br>Exhibit D. |
| | a polymer in oil flow meter for connection to a source of polymer in oil; the connection having a second input | The two or more Durachem completion fluid hydration trailers include polymer in oil flow meters for connection to a source of polymer in oil in a tote and a connection having a second input for the polymer in oil and a means for controlling the flow rate of the polymer in oil. |

| | | |
|---|---|---|
| | for the polymer in oil; means for controlling the flow rate of polymer in oil; | |
| | and a controller for sending signals to the means for controlling the flow rate of polymer in oil to control the flow rate of the polymer in oil in response to signals received from the water flow meter and the polymer in oil flow meter and a high-pressure pump connected to the tube bundle | The two or more Durachem completion fluid hydration trailers include a controller for sending signals to the means for controlling the flow rate of polymer in oil to control the flow rate of the polymer in oil in response to signals received from the water flow meter and the polymer in oil flow meter and an additional static mixer outside the tube bundle and connected to the tube bundle.<br><br><br><br>Exhibit C-1, extract. |
| | and having a discharge pressure sensor wherein a pressure signal is sent to the controller from the pressure sensor on the output of the high-pressure pump. | the two Durachem completion fluid hydration trailers include a discharge pressure sensor wherein a pressure signal is sent to the controller from the pressure sensor on the output of the high-pressure pump. Multiple pumps provide for simultaneous introduction of plural chemicals controlled within the same processor and then controlled by the VFD. (Variable Frequency Drive). That then uses the relationship between the Hertz of the motor to establish rpm thereby converting RPM to the rate of the oil that is being provided to the upper drive piston.  This rate of oil is then used to provide the direct correlation between the movement of the piston and the volume of the polymer that is pumped, it is then used as a noninvasive flow meter for the polymer pump volume. |
| 7. | The system of claim 1 further comprising a high-pressure pump having a discharge pressure sensor wherein a pressure signal is sent to the | |

| | controller from the pressure sensor on the output of the high-pressure pump. |  Exhibit C-1, extract. The pressure sensor of the Durachem system prevents the high-pressure chemical pumps from over pressuring the low-pressure tube bundle positioned below the trailer. This feature functions as an emergency shut off valve or an emergency over pressure switch. |
|---|---|---|
| 8. | The system of claim 7 further comprising a mass flow meter connected to the output of high-pressure pump. | The high pressure Graco 290 pump in the system includes a mass flow meter connected to the output of the high pressure pump. |
| 9. | The system of claim 1 further including a source of water connected to the connection. | The Durachem system can be connected by pump to a water tank filled with water. |
| 10. | The system of claim 1 further including a plurality of static mixers located within the tube bundle. | Based on information and belief, the two or more Durachem oil and gas drilling fluid hydration trailers include tube bundles with 180-degree bends incorporated into the tube bundles as static mixers. |

41.     As illustrated in the table above, Durachem infringes claims 1-3 and 6-10 of the '354 patent either literally or under the doctrine of equivalents.  Upon information and belief, Durachem also infringes claims 4 and 5 of the '354 patent.

42.     Durachem has known of the '354 patent since at least March 9, 2018 when Coil sent Durachem its cease and desist letter regarding Durachem's first infringing completion fluid hydration trailer.

43.     Durachem has caused and will continue to cause Noles Intellectual Properties damage by infringing the '354 patent.

## VI.   MISAPPROPRIATION OF TRADE SECRETS UNDER TEXAS UNIFORM TRADE SECRETS ACT

44. Plaintiffs hereby incorporate paragraphs 1-43 as if they were set forth herewith.

45. Plaintiffs have developed and owns numerous trade secrets that are used in interstate commerce related to Coil's oil and gas completion fluid and hydration trailers, including, without limitations technical specifications, quality systems, manufacturing processes (contacts and sources), system plans, customer lists, manufacturers lists, process diagrams, process characteristics, pricing lists, and the like.

46. Coil took appropriate steps to keep such trade secrets as confidential including, at least, but not limited to, making all employees sign for Employment Handbooks which contain confidentiality provisions.

47. Defendants obtained Coil's trade secrets in violation of certain confidentiality agreements and procedures in the Employment Handbook. Specifically, Defendants took and used one or more of technical specifications for gas completion fluid and hydration trailers.

48. Defendants used Coil's trade secrets, in at least, but not limited to, the formation and marketing of Durachem and the manufacture, marketing and use of fluid and hydration trailers.  As a result of Defendants' actions, Coil has been damaged and continues to suffer damage, at least to the value of Coil's product lines and the time and effort that went into the development of the product lines.

49. Coil is entitled to recover exemplary damages and court costs.

50. Coil is entitled to injunctive relief based upon Defendants' misappropriation of trade secrets.

## VII.   MISAPPROPRIATION OF TRADE SECRETS UNDER DEFENSE OF TRADE SECRETS ACT

51. Plaintiffs hereby incorporate paragraphs 1-50 as if they were set forth herewith.

52. Plaintiffs have developed and owns numerous trade secrets that are used in interstate commerce related to Coil's oil and gas completion fluid and hydration trailers, including, without limitations technical specifications, quality systems, manufacturing processes (contacts and sources), system plans, customer lists, manufacturers lists, process diagrams, process characteristics, pricing lists, and the like.

53. Coil took appropriate steps to keep such trade secrets as confidential including, at least, but not limited to, making all employees sign Employment Handbooks which contain confidentiality provisions.

54. The trade secrets and confidential information derive independent economic value from not being generally known or readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

55. Defendants used Coil's trade secrets after May 11, 2016, in at least, but not limited to, the formation and/or continued marketing of Durachem and the manufacture, marketing and use of fluid and hydration trailers.  As a result of Defendants' actions, Coil has been damaged and continues to suffer damage, at least to the value of Coil's product lines and the time and effort that went into the development of the product lines.

56. Defendants obtained Coil's trade secrets in violation of certain confidentiality agreements and procedures in the Employment Handbook. Specifically, Defendants took and used one or more of technical specifications for gas completion fluid and hydration trailers.

57. Coil is entitled to recover exemplary damages and court costs.

58. Coil is entitled to injunctive relief based upon Defendants' misappropriation of trade secrets.

## VIII.   MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

59. Plaintiffs hereby incorporate paragraphs 1-58 as if they were set forth herewith.

60. Plaintiffs have developed and certain confidential information that is used in interstate commerce related to Coil's oil and gas completion fluid and hydration trailers, including, without limitations technical specifications, quality systems, manufacturing processes (contacts and sources), system plans, customer lists, manufacturers lists, process diagrams, process characteristics, pricing lists, and the like.

61. Coil took appropriate steps to keep such information as confidential including, at least, but not limited to, making all employees sign Employment Handbooks which contain confidentiality provisions.

62. The confidential information derives independent economic value from not being generally known or readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

63. Defendants used Coil's confidential information, in at least, but not limited to, the formation and/or continued marketing of Durachem and the manufacture, marketing and use of fluid and hydration trailers.  As a result of Defendants' actions, Coil has been damaged and continues to suffer damage, at least to the value of Coil's product lines and the time and effort that went into the development of the product lines.

64. Defendants obtained Coil's confidential information in violation of certain confidentiality agreements and procedures in the Employment Handbook. Specifically, Defendants took and used one or more of technical specifications for gas completion fluid and hydration trailers.

65. Coil is entitled to recover exemplary damages and court costs.

66. Coil is entitled to injunctive relief based upon Defendants' misappropriation of confidential information.

## IX.   BREACH OF CONTRACT

67. Plaintiffs hereby incorporate paragraphs 1-66 as if they were set forth herewith.

68. Briggs entered into valid and binding contracts, namely confidentiality agreements and the Employment Handbook.

69. Coil substantially performed its obligations under the contracts.

70. Briggs breached his terms of the contract by sharing Coil's trade secrets and confidential information with others, including but not limited to others at Durachem.

71. Coil is entitled to actual damages and its attorneys' fee.

## X.   UNJUST ENRICHMENT

72. Plaintiffs hereby incorporate paragraphs 1-71 as if they were set forth herewith.

73. Defendants have retained, or are in the process of retaining, for their own use and benefit,

74. Coil's rights in and to the technology, trade secrets, confidential information and any proceeds therefrom.

75. As a direct and proximate result of Defendants' acts, Coil has been damaged and Defendants have been unjustly enriched. If Defendants are allowed to continue to retain rights in and to and/or practice the technology, trade secrets, and confidential information, they will continue to be unjustly enriched to the further detriment of Coil.

76. Defendants' conduct proximately caused Coil's injuries.

77. Coil incurred actual injury at least to the measure of the value it lost through Defendants' use and sales of Coil's fluid ad hydration trailers.

78. Coil is entitled to recover actual damages and exemplary damages.

## XI.   PRAYERS FOR RELIEF

WHEREFORE Plaintiffs respectfully request that this Court:

i.      Enter judgment that Durachem have infringed the '732 and '354 patents;

ii.     Award Plaintiffs damages in an amount sufficient to compensate Plaintiffs for Durachem's infringement of the '732 and '354 patents, in an amount no less than a reasonable royalty and lost profits, together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

iii.    Award Plaintiffs an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement;

iv.     Declare this case to be "exceptional" under 35 U.S.C. § 285 and award Plaintiffs its attorneys' fees, expenses, and costs incurred in this action;

v.      Declare Durachem's infringement of '732 and '354 patents to be willful and award treble damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. § 284;

vi.     Enter a preliminary and permanent injunction against Durachem to cease all infringing activity; and,

vii.    Award Plaintiffs such other and further relief as this Court deems just and proper.

**AND WHEREFORE** Coil respectfully requests that this Court:

viii.   Enter judgment that Briggs and Durachem have misappropriated trade secrets and confidential information owned by Coil;

ix.     Award damages to Coil in an amount sufficient to compensate Coil for Briggs's and Durachem's misappropriation of trade secrets and confidential information, together with prejudgment and post-judgment interest and costs;

x.      Enter a preliminary and permanent injunction against Briggs and Durachem to cease all use of Plaintiffs' trade secrets and confidential information;

xi.     Award exemplary damages to Coil based on the willful and intentional conduct of Briggs and/or Durachem is misappropriating Coil's trade secrets and confidential information;

xii.    Award attorneys' fees to Coil based on the willful and intentional conduct of Briggs and/or Durachem is misappropriating Coil's trade secrets;

xiii.   Award Coil both actual damages and attorneys' fees for Briggs breach of contract;

xiv.    Award Coil both actual, attorneys' fees and exemplary damages for Briggs and Durachem's unjust enrichment; and,

xv.     Award Coil such other and further relief as this Court deems just and proper.

## XII.   JURY DEMAND

Coil and Noles IP hereby request a trial by jury on issues so triable by right.

Respectfully submitted,

**Ramey & Schwaller, LLP**

By: /s/ William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
5020 Montrose Blvd., Suite 750
Houston, Texas 77006
Telephone: (713) 426-3923
Facsimile: (832) 900-4941
wramey@rameyfirm.com

*Attorneys for Coil Chem, LLC ad Noles
Intellectual Property, LLC*